## Matthew St Clair Clarke, plaintiff in error v. Conrad Kownslar.

The circuit court were required to instruct the jury upon points of law growing out of allegations of facts, of which there was no evidence or proof. The refusal of the court to do so was correct.

IN error to the circuit court of the United States for the county of Washington, in the District of Columbia.

This case was argued by Coxe, for the plaintiff in error; and by Mr Dunlap, and Mr Key, for the defendant.

The court, in their opinion, having decided that none of the questions which were argued, were presented by the evidence in the circuit court, the arguments of counsel on those questions are omitted.

Mr Justice Story delivered the opinion of the Court.

This is a writ of error to the circuit court of the District of Columbia for the county of Washington.

Kownslar brought the original action in November 1832, against Clarke, upon the following letter of guarantee: "Mill creek, Virginia. Conrad Kownslar: Dear sir, if you will make James Miles of this city your agent, as you intimated to him, I will see your money paid in due course of sales. He asks five per cent commission; and will take all intended for this market. He wishes an answer. Your obedient servant, Matthew St Clair Clarke. Washington, the 27th of September 1828." Kownslar received the letter; and sent paper accordingly to Miles, between November 1828 and December 1829; amounting (as the declaration avers) to the value of 8396 dollars and 75 cents, part of which paper was afterwards returned: and upon the sales of the residue there remains due and unpaid (as the declaration avers) to Kownslar, the sum of 4238 dollars and 62½ cents, after deducting commissions: to recover which sum the action was brought.

At the trial, upon the general issue, a verdict was found for the plaintiff, upon which judgment was rendered in his favour; and the present writ of error is brought to revise that judgment. Two bills of exceptions were taken, the second only of which is now before the court for consideration; excepting only so far as the evidence contained in the first is referred to in the latter. It appears from these bills of exceptions, that, at the trial, the plaintiff offered in evidence the letter of guarantee; and then the testimony of Miles, who proved that he was a commission merchant in the city of Washington for the sale of paper and other articles of stationary; that he received consignments of such articles from several persons, who were not in any manner secured or guarantied by any persons for their consignments; and also, further testified, that after the said letter was written, the plaintiff sent sundry packages of paper to him for sale; and that before he sent the same, he informed Miles that he had received the said letter from the defendant, and should send it. On cross-examination, he further proved a letter (dated November 4th, 1828) accompanying the packages first sent; and also, certain articles of agreement entered into between Clarke and the witness (dated the 1st of October 1828); both of which papers are in the record; and that, after the said paper was received from the plaintiff by Miles, the defendant (Clarke) knew of it; and was then, and afterwards, in the habit of inspecting the books kept by the witness, in which the paper, as received by the witness from the plaintiff, and the sales made thereof from time to time, as the same was received and sold, were entered. He further testified, that on the 28th of April 1830, he terminated his business as such commission merchant; made a general assignment of all his stock, books, &c. to the defendant, who took possession under the same of various articles then in the store of Miles; but never did take possession of, or exercise any control over the paper so lying in his said store belonging to the plaintiff; but the same was delivered to, and received by the plaintiff. The assignment was then introduced.

These are all the facts stated in the first bill of exceptions. The second proceeded to state, that after the testimony so given, the plaintiff proved, by Miles, that the usage and practice of commission merchants in the city of Washington was to sell either on credit or cash the articles consigned. But that as soon as the proceeds of sales are received by such commission merchant, he at once becomes responsible to the consignor for the proceeds, and is not entitled to any

[Clarke v. Kownslar.]

credit for the same. He further gave in evidence the books of Miles, and two certain drafts for 1000 dollars each, with the indorsements and protests of the same. Each of these drafts was dated at Mill creek, October 31st, 1829, drawn on Miles, and payable to the order of Lewis Hoff, Esq. cashier; one in ten days after date, the other in thirty days after sight, and were each accepted by Miles on the 5th of November of the same year.

The plaintiff further offered to prove by Miles, and he testified, that when he accepted these drafts he had no funds from the collection of sales of the plaintiff's paper; but accepted the same in expectation of making such collections, which, however, he was not able to make. The defendant then gave in evidence certain letters of the plaintiff to Miles, dated on the 13th of May, and the 17th of October 1829. The first letter, after speaking of paper sent, and of other paper of the plaintiff on hand, &c., added: "you will please to send me a check for the amount you advised I should draw on you for at thirty days. By so doing you will have eight to ten days after date till it will be presented for pay." The second, after asking for information by the bearer, how Miles comes on with the sale of his paper, &c. added: "my draft, I presume, will be presented soon. I hope you will not suffer it to be returned." The plaintiff then read to the jury the account between him and Miles, showing the amount claimed in the suit.

The defendant's counsel then prayed the court to instruct the jury as follows: that if they shall believe from the said evidence, that, according to the ordinary usage of the business of commission merchants in the city of Washington, in which Miles was engaged and in which he acted in receiving, selling and accounting for the paper consigned to him, no credit was allowed or given to such commission merchant; and that without the knowledge, privity or consent of the said defendant, the plaintiff drew upon Miles for the sums of money which he had received as the proceeds of said sales of his paper, so made by Miles, which drafts were payable at distant days or periods: that then such drafts, so drawn as aforesaid and accepted by Miles, payable according to their tenor, amount to a credit given by the plaintiff to Miles; and that such credit, so given, constitutes a new agreement and discharges the defendant from his liability on his said letter of guarantee. The court refused to give the instruction as prayed; and to this refusal the defendant excepted:

[Clarke v. Kownslar.]

and the propriety of this refusal constitutes the sole point for our consideration.

We give no opinion upon the instruction, as matter of law, because we are of opinion that there was no evidence whatsoever before the jury, which called upon the court to give it; and that upon this account it was properly refused. There was no proof before the jury that Miles, at the time of the acceptance of the drafts, had any money in his hands, which he had received as the proceeds of the sales of the paper of the plaintiff. The drafts, being payable at future times, the mere acceptance of them by Miles, did not establish any such fact; for it is a known and ordinary course of business for such acceptances to be made, not only when the acceptor has funds in his hands, but also when funds are expected to be received by him before the maturity of the drafts; and indeed often, for the accommodation of the drawers when the acceptor, being a commission merchant, has the property on hand, out of the sales of which he expects to reimburse himself for the advance. The theory of the law, which supposes the acceptor to have funds of the drawer in his hands, is a theory mainly intended for the security of third persons, and leaves the transaction to be judged of between the parties themselves, according to the ordinary course of business between them. But without resorting to these considerations, the fair presumption would seem to be, in cases like the present, that drafts drawn payable at future periods, were designed to reach funds not yet received, but to be received at the maturity of the bills. The present case, however, does not stand upon presumptions. Here is positive proof from Miles (who seems to have been the only witness in the case), that at the time he accepted the bills he had no funds in his hands, but that he expected to make collections, which however he did not make. And the written documents in no shape shake his testimony. Indeed, a part of the very instruction, as framed, seems founded upon the credibility of that testimony. So that we do not perceive how, consistently with the rules of law, the instruction could be given; as there was no evidence before the jury conducing to prove the facts on which it was founded.

The judgment is therefore affirmed, with six per cent damages and costs.


This cause came on to be heard on the transcript of the record

[Clarke v. Kownslar.]

from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel ; on consideration whereof, it is adjudged and ordered by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed, with costs and damages at the rate of six per centum per annum.